Joseph W. Cotchett (SBN 36324)
Thomas E. Loeser (SBN 202724)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Rd #200,
Burlingame, CA 94010
Telephone: 650.697.6000

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIOT CANICK, DWHITNEY EMANUEL, CYNTHIA MONTALVAN, SUSAN STYER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SALESFORCE, INC., ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD INSURANCE CO., and DOES 1-100, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Eliot Canick, Dwhitney Emanuel, Cynthia Montalvan, and Susan Styer ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Class Members"), by and through their undersigned counsel, bring this class action complaint against Defendants Salesforce, Inc. ("Salesforce"), Allianz Life Insurance Co. of North America ("Allianz"), Farmers Insurance Exchange, Farmers Group, Inc, Farmers New World Life Insurance Co. (collectively, "Farmers"), and Does 1-100 (collectively, "Defendants"). Plaintiffs bring these allegations on information and belief, except the allegations specifically pertaining to themselves, which are based on their personal knowledge.

## I. INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have a grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2. Salesforce is a cloud-based software company providing its services to various corporate clients throughout the country in sales, customer service, marketing automation, e-commerce, analytics, artificial intelligence, and application development.

3. On May 30, 2025, Farmers Group, Inc., one of the country's largest insurance companies, discovered suspicious activity involving an unauthorized actor accessing one of its third-party vendor's databases containing Farmers customer information (the "Farmers Data breach").[2] On information and

---

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).

[2] *See* Farmers Notice of Security Incident, available at https://www.farmers.com/content/dam/farmers/marketing/digital/aem/pdfs/disclosures/notice-of-incident.pdf (last accessed August 27, 2025).

belief, that third-party vendor is Salesforce, whose software was reportedly targeted through compromised customer OAuth tokens, and/or phishing attempts utilizing fake Salesforce apps to obtain victims' login details.[3]

4. Defendants Allianz is a wholly owned subsidiary of the German multinational financial services company, Allianz SE, headquartered in Munich. Allianz markets itself as "a leading provider of financial and retirement solutions"[4] with a $124,000,000,000.00 portfolio.[5] The Minnesota Department of Commerce Insurance Supplement detailed that Allianz Life had $177,865,640,835.00 in Assets.[6] Allianz provides financial services including annuities and life insurance.

5. On or about July 16, 2025, Defendants Allianz experienced a cybersecurity incident involving unauthorized access to the majority of its 1.4 million US customers, financial professionals, and select employees (the "Allianz Data Breach").[7] On July 17, 2025, Allianz became aware of the Data Breach.[8] On Saturday July 26, 2025, Allianz notified the Office of the Maine Attorney General as

---

[3] *See* Widespread Data Theft Targets Salesforce Instances via Salesloft Drift, available at https://cloud.google.com/blog/topics/threat-intelligence/data-theft-salesforce-instances-via-salesloft-drift (last accessed August 27, 2025); https://www.bleepingcomputer.com/news/security/farmers-insurance-data-breach-impacts-11m-people-after-salesforce-attack/ (last accessed August 27, 2025); https://www.scworld.com/brief/over-1-1m-farmers-insurance-customers-impacted-by-salesforce-linked-hack (last accessed August 27, 2025).

[4] *About Allianz*, https://www.allianzlife.com/about (last visited July 28, 2025).

[5] *Why Allianz*, https://www.allianzlife.com/why-allianz (last visited July 28, 2025).

[6] MINNESOTA DEPARTMENT OF COMMERCE, ANNUAL INSURANCE SUPPLEMENT, https://mn.gov/commerce-stat/pdfs/Annsup2023.pdf (last visited July 29, 2025).

[7] Lawrence Abrams, *Allianz Life confirms data breach impacts majority of 1.4 million customers*, BLEEPING COMPUTER (July 26, 2025), https://www.bleepingcomputer.com/news/security/allianz-life-confirms-data-breach-impacts-majority-of-14-million-customers/ (last visited July 28, 2025).

[8] OFFICE OF THE MAIN ATTORNEY GENERAL, DATA BREACH NOTIFICATION FOR ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0446bff3-a013-43ed-82fa-bca6bb157de1.html (last visited July 29, 2025).

required by law.[9] Allianz later informed the public that the breach occurred due to a "threat actor gain[ing] access to a third-party, cloud based CRM system."[10] On information and belief, the "cloud based CRM system" is Salesforce.

6. The Farmers Data Breach and the Allianz Data Breach are collectively referred to as the "Data Breach."

7. This is a "hub-and-spoke" data breach case. The "hub" in this case is Salesforce, which is a company that specializes in cloud-storage technologies to warehouse and secure sensitive data, as well as other software products. Salesforce sells its software services to numerous companies, or "spokes," who store information using Salesforce's cloud-based software. These spokes include Farmers, Allianz, and numerous other entities, the names of which are not yet known but are included as Doe Defendants 1-100. All allegations regarding Defendants generally include and apply to each and every one of the "spoke" Doe Defendants.

8. Despite knowing how valuable customer information is, Defendants failed to adequately protect Plaintiffs' and Class Members' Personally Identifiable Information ("PII"). This PII was compromised due to Defendants' negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiffs' and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiffs and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiffs and class members, will remain for their respective lifetimes.

9. As a result of the Data Breach, through which their PII was compromised, disclosed, and obtained by unauthorized third parties, Plaintiffs and Class Members have suffered concrete damages

---

[9] Sara Chernikoff, *A majority of customers' personal information was stolen in data breach at Allianz life*, USA TODAY (July 28, 2025), https://www.usatoday.com/story/tech/2025/07/28/us-customers-data-stolen-cyberattack-allianz-life/85406949007/ (last visited July 29, 2025).

[10] *Id.*

and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiffs and the other Class Members will incur ongoing out-of-pocket costs (*e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft).

10. By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach.

## II. PARTIES

### A. Plaintiffs

11. Plaintiff Eliot Canick is a citizen of San Francisco, California.

12. Upon information and belief, Allianz Received Plaintiffs Eliot Canick's PII from Plaintiffs' purchase of an Allianz Life annuity in 2023. In return for receipt of this annuity, Plaintiff Canick provided Allianz with extensive and sensitive PII at least including name, address, phone number, email address, and Social Security number ("SSN").

13. Plaintiff Cynthia Montalvan is a resident of California who, during the relevant period, was a customer of Farmers. As a condition of receiving Farmers' products and services, Plaintiff furnished her Private Information to Defendants.

14. Plaintiff Susan Styer is a resident of California who, during the relevant period, was a customer of Farmers. As a condition of receiving Farmers' products and services, Plaintiff furnished her Private Information to Defendants.

15. Plaintiff Dwhitney Emanuel is a resident of California who, during the relevant period, was a customer of Farmers. As a condition of receiving Farmers' products and services, Plaintiff furnished his Private Information to Defendants.

16. Defendant Salesforce, Inc. is a corporation organized under the laws of the state of Delaware, with a principal place of business located in San Francisco, California. Salesforce provides a wide range of software products to companies in various industries.

17. Defendant Farmers Insurance Exchange is an unincorporated association organized under the California Insurance Code, with its principal place of business in Woodland Hills, California.

18. Defendant Farmers Group, Inc. is a Nevada corporation with its principal place of business in Woodland Hills, California.

19. Defendant Farmers New World Life Insurance Company is a Washington corporation with its principal place of business in Bellevue, Washington. This Court has personal jurisdiction over this Defendants because (1) it is licensed to sell life insurance products in California and does so on a continuous and systematic basis, (2) the claims alleged herein arise out of Defendants' sale of insurance policies in California.

20. Plaintiffs do not know the true names and capacities of the Doe Defendants and therefore sue them by fictitious names. When their true names and capacities are discovered, Plaintiffs will seek leave to amend this complaint by inserting those true names and capacities. On information and belief, Doe Defendants may include, but do not necessarily include, individuals, businesses, corporations, partnerships, associations, joint ventures, defendants that are government in nature, as well as product manufacturers, professionals, contractors, and/or all other types of entities and/or individuals as discovery in the matter may reveal. Regardless, Plaintiffs alleges that each of the Doe Defendants is legally responsible for the Data Breach and legally caused and/or was a substantial factor in the injury and damages to Plaintiffs and Class members.

## III. JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess

of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendants.

22. The Court has personal jurisdiction over Defendants Salesforce, Farmers, Allianz and the Doe Defendants because Salesforce maintains its headquarters and principal places of business in this District and conducts significant business in this District, thus availing itself of California's markets by providing its software services therein; it has sufficient minimum contacts with California; and a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District.

23. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because, *inter alia*, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in, were directed to, and/or emanated from this District; Defendants transact substantial business and have agents in this District; a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District; and because Defendants Salesforce's corporate headquarters are located within this District.

## IV. FACTUAL ALLEGATIONS

### a. Salesforce, Farmers, Allianz, and the Doe Defendants Collect and Store Personal Information

24. In providing its software services to businesses, Salesforce routinely collects sensitive Personal Information of its clients' customers and consumers. It asserts on its website that "We earn the trust of our customers, employees, and extended family through transparency, security, compliance, privacy, and performance. And we deliver the industry's most trusted infrastructure."[11] Salesforce is aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy. The same is true of the Farmers, Allianz, and Doe Defendants who provided their customers' Personal Information to Salesforce.

25. This information includes, on information and belief, "phone book" information such as names, email addresses, phone numbers, mailing addresses, but also includes highly sensitive

[11] https://trust.salesforce.com/ (last accessed August 27, 2025).

information including SSNs, financial information, tax information, credit history, employment information, drivers' license information, insurance information, and other highly sensitive information. Some or all of this information is typically provided to a business when a consumer is attempting to secure products and services. As a result, software providers like Salesforce collect and maintain large amounts of highly sensitive Personal Information received and stored through its various business clients.

26. Salesforce's public-facing statements on privacy and security, much like similar statements made by Farmers, Allianz, and Doe Defendants make it clear that it is aware of the need to safeguard the sensitive Personal Information entrusted to it by clients and consumers as part of providing its software services.

**b. The Data Breach**

27. On May 30, 2025, Farmers discovered suspicious activity involving an unauthorized actor accessing one of Farmers' third-party vendor's databases containing Farmers customer information.[12]

28. According to the Notice of Security Incident published on Farmers' website, "the third-party vendor had monitoring tools in place, which allowed the vendor to quickly detect the activity and take appropriate containment measures, including blocking the unauthorized actor."

29. Farmers launched an investigation to determine the nature and scope of the incident and notified appropriate law enforcement authorities. That investigation revealed that "an unauthorized actor accessed the vendor's database on May 29, 2025, and acquired certain data."[13]

---

[12] *See* Farmers Notice of Security Incident, available at https://www.farmers.com/content/dam/farmers/marketing/digital/aem/pdfs/disclosures/notice-of-incident.pdf (last accessed August 27, 2025).

[13] *Id.*

30. According to Farmers, it began sending written notices to affected individuals on August 22, 2025, approximately three months after first learning about the Data Breach.[14] On information and belief, the "vendor" repeatedly referenced by Farmers as the source of the Data Breach is Salesforce, which has affected numerous other "spoke" businesses as well who use Salesforce's software and services.

31. Upon information and belief, Allianz obtained Plaintiffs and Class Members' PII in exchange for provision of its life insurance and financial services and products.

32. Allianz promises its customers and the public that it "treat[s] the personal information furnish[ed to Allianz] with the utmost respect."[15] To protect this sensitive customer Personally Identifiable Information ("PII"), Allianz claims that it "uses security controls, including encryption, firewalls, advanced malware detection, and the concept of least privilege for access management."[16] Allianz further admits that it collects and shares PII including "Social Security number[s] and income, account balances and payment history, transaction history and insurance claim history."[17]

33. Notwithstanding these security promises, on July 16, 2025, Allianz experienced a data breach that publicly exposed Plaintiffs and class members' PII.[18] A group of threat actors, ShinyHunters, breached Allianz' security measures through a third-party customer relationship management ("CRM") system used by Allianz.[19] On information and belief, the third-party CRM is the Salesforce CRM. The

---

[14] *Id.*

[15] https://www.allianzlife.com/Privacy (last visited July 29, 2025).

[16] Allianz, *Privacy Notice Allianz Life of North America* (July 2024), https://www.allianzlife.com/-/media/Files/Global/documents/2016/05/09/17/32/M40018.pdf (last visited July 30, 2025).

[17] *Id.*

[18] Lawrence Abrams, *Allianz Life confirms data breach impacts majority of 1.4 million customers*, Bleeping Computer (July 26, 2025), https://www.bleepingcomputer.com/news/security/allianz-life-confirms-data-breach-impacts-majority-of-14-million-customers/ (last visited July 28, 2025).

[19] *Id.*

Data Breach was so extensive that it impacted a majority of Allianz' 1.4 million customers.[20] Allianz' official disclosure admitted that compromised PII includes "full names, social security numbers, policy and contract numbers, dates of birth, mailing addresses, phone numbers, and email addresses."[21]

34. Allianz' disclosure to the Office of the Maine Attorney General states that they began providing written notification to affected individuals beginning August 1, 2025.[22]

35. Defendants are familiar with their obligations to protect sensitive customer information. Allianz claims that they safeguard consumer "information in compliance with federal and state laws by implementing industry-standard administrative, physical, and technical measures to secure our websites and the data shared through them."[23]

36. Allianz' parent company, Allianz SE, has repeatedly acknowledged the risk of data breaches and the importance of cybersecurity. Allianz SE's 2025 Risk Barometer identified cyber incidents as "the top global risk for 2025… It is the fourth year in a row that cyber is ranked #1."[24] Allianz SE further stated that "for many companies, cyber risk, exacerbated by rapid development of AI, is the big risk overriding everything else…. Cyber is the top risk across North and South America,

---

[20] Zack Whittaker, *Allianz Life says 'majority' of customers' personal data stolen in cyberattack*, TECHCRUNCH (July 26, 2025), https://techcrunch.com/2025/07/26/allianz-life-says-majority-of-customers-personal-data-stolen-in-cyberattack/ (last visited July 28, 2025).

[21] *Allianz Life Data Breach 2025: Timeline, Impact and Analysis*, CYBER MANAGEMENT ALLIANCE (July 28, 2025), https://www.cm-alliance.com/cybersecurity-blog/allianz-life-data-breach-2025-timeline-impact-and-analysis (last visited July 30, 2025).

[22] OFFICE OF THE MAIN ATTORNEY GENERAL, DATA BREACH NOTIFICATION FOR ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0446bff3-a013-43ed-82fa-bca6bb157de1.html (last visited July 29, 2025).

[23] Allianz, *Online Privacy Policy*, https://www.allianzlife.com/Privacy#OnlinePrivacyPolicy (last visited July 30, 2025).

[24] Allianz Commercial, *Allianz Risk Barometer* (Jan. 2025), https://commercial.allianz.com/content/dam/onemarketing/commercial/commercial/reports/Allianz-Risk-Barometer-2025.pdf (last visited July 30, 2025).

in Europe and Africa."[25] Allianz was fully aware of the threat posed by cyber security breaches and yet still implemented insufficient privacy measures to protect Plaintiffs and Class Members sensitive PII.

37. Plaintiffs and Class Members had the reasonable expectation that Defendants would comply with their obligations related to their PII. Defendants owed Plaintiffs and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected their PII.

38. Defendants failed to comply with their obligations, resulting in the Data Breach. Class Members now face years of constant surveillance of their financial and personal records.

39. Defendants have provided no assurances that all personal data has been either recovered or destroyed or that the companies have sufficiently improved their data security practices to the extent necessary to avoid a future similar intrusion into its systems.

**c. Defendants Failed to Comply with Regulatory Guidance and Industry Standard Cybersecurity Practices.**

40. Defendants' data security failures stem from their failure to comply with state and federal laws and requirements as well as industry standards governing the protection of PII.

41. At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain reasonable security procedures and practices and to protect PII from unauthorized access.

42. Defendants also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendants. Several publications by the

[25] *Id.*

FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

43. The FTC recommends:

(a) limiting access to customer information to employees who have a business reason to see it;

(b) keeping customer information in encrypted files provides better protection in case of theft;

(c) maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;

(d) using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;

(e) monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,

(f) monitoring activity logs for signs of unauthorized access to customer information.[26]

44. The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

45. In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[27] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs;

---

[26] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last visited June 13, 2024).

[27] Federal Trade Commission, *Protecting PII: A Guide for Business*, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited June 13, 2024).

monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

46. The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

47. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

48. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49. The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

50. According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common

type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[28] According to Verizon's 2021 Data Breach Investigations Report, 43% of breaches stemmed from phishing and/or pretexting schemes.[29]

51. Defendants were aware of their obligations to protect customers' PII, PHI and privacy before and during the Data Breach, yet failed to take reasonable steps to protect customers from unauthorized access. In this case, Defendants were at all times fully aware of the obligation to protect the Private Information of Defendants' customers because of their status as a leaders in their respective industries, including CRM provision, insurance, life insurance and annuity provision. Defendants were also aware of the significant repercussions if they failed to protect consumer data because Defendants collected Private Information from millions of individuals and knew that this Private Information, if hacked, would result in injury to individuals, including Plaintiffs and Class Members.

52. Based upon the known details of the Data Breach and how it occurred, Defendants also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**d. The Data Breach Puts Class Members at Increased Risk of Fraud and Identity Theft.**

53. An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

---

[28] FBI, *2020 Internet Crime Report*, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf (last visited July 30, 2025).

[29] Verizon, *2021 DBIR Master's Guide*, https://www.verizon.com/business/resources/reports/dbir/2021/masters-guide/ (subscription required) (last visited June 13, 2024).

54. Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiffs and Class Members' finances are now at risk due to the Data Breach.

55. Identity theft is the most common consequence of a data breach—118.6 million individuals had their PII exposed through data breaches in 2020.[30] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 54% of identity theft victims reported emotional distress.[31] Victims of identity theft can experience financial damage as thieves run up debts into the tens of thousands. These victims can have their credit history destroyed impairing their ability to obtain a loan, a mortgage, or even to lease housing. Victims of identity theft can experience substantial legal complications due to breaches. These risks and vulnerabilities are ongoing.

56. Plaintiffs and members of the Class are now in the position of having to take steps to mitigate these damages caused by the Data Breach. Once the use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies carried out by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[32]

57. Defendants failed to protect and safeguard Plaintiffs and Class Members' private information, in fact Defendants failed to adhere to even its most basic obligations. As a result, Plaintiffs

---

[30] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?,* Identityforce (Apr. 14, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited June 16, 2025).

[31] *Id.*

[32] *Identity Theft: The Aftermath 2013*, Identity Theft Resource Center, https://idtheftcenter.org/wp-content/uploads/2021/09/Aftermath2013.pdf (last visited June 16, 2025).

and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## V. CLASS ALLEGATIONS

58. Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> **Nationwide Class:** All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.
>
> **California Class:** All natural persons in California whose Personally Identifiable Information was compromised as a result of the Data Breach.

59. Excluded from the Class are Defendants, any entity in which a Defendant has a controlling interest, any of the officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any Judge to whom this case is assigned, and his or her immediate family.

60. The definition of the Class may be further modified or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

61. **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the Class or the identity of the Class Members because such information is in the exclusive control of Defendants. Nevertheless, based on published reports, the Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendants.

62. **Commonality and Predominance:** This action involves common questions of law and fact as to all members of the class, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

(a) Whether Defendants engaged in the conduct alleged herein;

(b) Whether Defendants had a legal duty to use reasonable security measures to protect Plaintiffs and Class Members' PII;

(c) Whether Defendants' failure to implement effective security measures to protect Class Member Private Information was negligent;

(d) Whether Plaintiffs and Class Members are entitled to injunctive relief;

(e) Whether Plaintiffs and Class Members are entitled to declaratory relief; and

(f) Whether, as a result of Defendants' conduct, Plaintiffs and the Class are entitled to damages and equitable relief.

63. **Typicality:** Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendants' substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that he seeks to represent, and there are no defenses that are unique to Plaintiffs. Plaintiffs and Class Member claims and injuries arise from the same facts and are based on the same law.

64. **Adequacy:** Plaintiffs are adequate Class Representatives because their interests do not conflict with the interests of other Class Members they seek to represent; Plaintiffs have retained competent counsel that is experienced in complex class action litigation; and Plaintiffs intend to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

65. **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Defendants, so, absent class-wide adjudication, it would be virtually impossible for Class Members to seek individual redress against Defendants' wrongful conduct.

## VI. CAUSES OF ACTION

**COUNT ONE**

**NEGLIGENCE**

**(On Behalf of Plaintiffs and the Nationwide Class)**

66. Plaintiffs incorporate paragraphs 1 through 65 as if fully set forth herein.

67. As part of their business, Defendants solicited, collected, and maintained Plaintiffs and Class Members' PII.

68. Defendants' businesses depended upon collecting Plaintiffs' and Class Members' PII because the financial services and products they provide require the use and maintenance of Plaintiffs' and Class Members' PII.

69. Defendants owed Plaintiffs and Class Members a common law duty to use reasonable care to avoid causing foreseeable risks of harm to Plaintiffs and Class Members collecting, employing, maintaining, storing, and managing PII.

70. Upon collecting, accepting custody of, and storing Plaintiffs' and Class Members' PII, Defendants undertook and owed a duty to Plaintiffs and the Class to safeguard and protect their PII using reliable, proven, effective, and safe methods for doing so.

71. Defendants were fully aware that Plaintiffs' and Class Members' PII was sensitive, that Plaintiffs and Class Members would suffer extensive and myriad injuries if their PII was wrongfully disclosed, and that providing sufficient security for the collected PII was of critical importance.

72. Plaintiffs and Class Members were foreseeable victims of any insufficient security protocols and practices by Defendants. Defendants had a duty of care to not subject Plaintiffs and Class Members to an unreasonable risk of injury. Defendants knew that cyber criminals frequently use cyberattacks to steal sensitive PII and exploit it for financial gain to the substantial detriment of the individuals to whom the PII pertains.

73. Defendants' duty to Plaintiffs and Class Members extended to protecting them from the foreseeable risk of third parties' criminal conduct.

74. Defendants' duties to Plaintiffs and Class Members also included:

(a) using reasonable and adequate technology and security procedures to promptly detect security incidents, data breaches, or unauthorized access into servers, email systems, and company networks;

(b) safeguarding Plaintiffs and Class Members' PII by employing adequate and reasonable security practices and technology; and

(c) using reasonable care in creating, integrating, maintaining, and testing Defendants' email accounts, networks, third-party CRM providers, policies and procedures, employee trainings, and security protocols, to ensure that Plaintiffs and Class Members' PII was safe and reasonably secure from theft, publication, or disclosure.

75. Only Defendants were capable of securing their own systems and programs and making sure that the security measures employed were sufficient to safeguard Plaintiffs' and Class Members' PII.

76. Defendants breached their duty of care because they failed to adequately safeguard the PII belonging to Plaintiffs and Class Members. Defendants' breaches included, but were not limited to:

(a) Failing to adequately train and test its employees on sufficiently and safely sending and storing PII;

(b) Failing to reasonably implement protocols for promptly detecting security incidents, data breaches, or unauthorized access to sensitive data, including Plaintiffs and Class Members' PII;

(c) Failing to use adequate and reasonable security systems and policies for safeguarding the PII they possessed;

(d) Failing to train employees to avoid phishing emails and test employees' conduct upon receipt of suspicious emails;

(e) Failing to enforce security policies for protecting Plaintiffs and Class Members' PII;

(f) Failing to use reasonable and adequate industry standard security systems and devices for emails, including SPAM filters, DMARC compliance, and/or Sender Policy Framework compliance;

(g) Failing to ensure that they did not maintain or keep PII on their systems, servers, and devices for longer than necessary;

(h) Failing to use reasonable care in protecting, maintaining, using, and erasing the PII that they possessed.

77. Defendants' failure to fulfill these duties was reckless, grossly negligent, and wrongful considering the foreseeable and substantial risks that such a failure would entail.

78. Plaintiffs and Class Members have already suffered injuries and are at imminent risk of additional injuries as a foreseeable and proximate result of Defendants' negligence.

79. Plaintiffs and Class Members' PII has been publicly exposed as a direct result of Defendants' breach of their duty to use reasonable care to adequately protect and secure Plaintiffs and Class Members' PII.

80. Plaintiffs and Class Members have suffered and will continue to suffer damages which are the direct and proximate result of Defendants' negligent conduct. These damages include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

81. Defendants' wrongful acts and omissions constituted and continue to constitute common law negligence.

82. Plaintiffs and Class Members are accordingly entitled to damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiffs and the Nationwide Class)**

83. Plaintiffs incorporate paragraphs 1 through 65 as if fully set forth herein.

84. The FTC Act prohibits "unfair practices in or affecting commerce."[33] It imposed and continues to impose on Defendants a duty to Plaintiffs and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiffs and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumer's confidential data as an unfair act or practice prohibited by Section 5 of the FTC Act.[34]

85. Defendants' failures to use reasonable and appropriate methods to guard Plaintiffs and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits.

86. Defendants violated the FTC Act by failing to comply with industry-standard data security practices, as described above.

87. Defendants' collection and maintenance of Plaintiffs and Class Members' PII were actions central to their business and affected commerce.

88. The class of people that the FTC Act is intended to protect include Plaintiffs and Class Members.

89. The injuries that Plaintiffs and Class Members suffered and continue to suffer and that resulted from the data breach are the types of injuries that the FTC Act was intended to prevent.

---

[33] 15 U.S.C. § 45(a).

[34] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

90. As a direct and proximate result of Defendants' negligence and violations of the FTC Act and the Unfair Competition Law ("UCL") Plaintiffs and Class Members have suffered and will continue to suffer injury, which include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

91. Plaintiffs and the Class are accordingly entitled to damages in amounts to be proven at trial.

## COUNT THREE
## GROSS NEGLIGENCE
## (On Behalf of Plaintiffs and the Nationwide Class)

92. Plaintiffs incorporate paragraphs 1 through 65 as if fully set forth herein.

93. Plaintiffs and Class Members entrusted Defendants with highly-sensitive and inherently personal private data subject to laws on confidentiality and unfair trade practices.

94. In collecting, obtaining and storing Plaintiffs and Class Members' PII, Defendants owed a duty of reasonable care in safeguarding the PII.

95. Defendants' networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiffs and Class Members' PII were secured from unauthorized access.

96. Defendants' networks, systems, protocols, policies, procedures and practices were not reasonable given the sensitivity of the Plaintiffs and Class Members' private data.

97. Defendants did not comply with state and federal laws and rules concerning the use of safekeeping of this private data.

98. Despite knowing their networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiffs and Class Members' PII were secured from unauthorized access, Defendants ignored the inadequacies and were oblivious to the risk of unauthorized access they had created.

99. Defendants' behavior establishes facts evidencing a reckless disregard for Plaintiffs and Class Members' rights.

100. Defendants were, therefore, grossly negligent.

101. Defendants' negligence is directly linked to Plaintiffs and Class Members' injuries. As a result of Defendants' reckless disregard for Plaintiffs and Class Members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiffs and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

102. The harm to Plaintiffs and the Class Members was a proximate, reasonably foreseeable result of Defendants' breaches of the applicable laws and regulations.

103. Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT FOUR**

**BREACH OF IMPLIED CONTRACTS**

**(On Behalf of Plaintiffs and the Nationwide Class)**

104. Plaintiffs incorporate paragraphs 1 through 65 as though fully set forth herein.

105. Plaintiffs and Class Members provided their PII to Defendants in order to obtain financial products and services such as insurance, life insurance and annuities.

106. By providing their PII, and upon Defendants' acceptance of such information, Plaintiffs and Class Members on one hand, and Defendants on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Defendants were obligated to take reasonable steps to secure and safeguard that information.

107. Defendants had an implied duty of good faith to ensure that the PII of Plaintiffs and Class Members in its possession was only used in accordance with their contractual obligations.

108. Defendants were therefore required to act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Defendants expressly assented to these terms in their Privacy Policies.

109. Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to Defendants, including paying for the services provided by Defendants and/or providing the PII required by Defendants.

110. Defendants breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs and Class Members' PII, resulting in the Data Breach. Defendants unreasonably interfered with the contract benefits owed to Plaintiffs and Class Members.

111. Further, on information and belief, Defendants have not yet provided Data Breach notifications to some affected Class Members who may already by victims of identity fraud or theft, or

are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Defendants. These Class Members are unaware of the potential source for the compromise of their PII.

112. The Data Breach was a reasonably foreseeable consequence of Defendants' actions in breach of these contracts.

113. As a result of Defendants' conduct, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiffs and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

114. Neither Plaintiffs, nor Class Members, nor any reasonable person would have provided their PII to Defendants had they disclosed that their security was inadequate or that it did not adhere to industry-standard security measures.

115. As a result of Defendants' breach, Plaintiffs and the Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

116. As a result of Defendants' breach, Plaintiffs and the Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiffs and the Class Members have suffered actual identity theft and the inability to control their PII.

117. Accordingly, Plaintiffs and Class Members have been injured as a result of Defendants' breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT FIVE**
**BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiffs and the Nationwide Class)**

118. Plaintiffs incorporate paragraphs 1 through 65 as though fully set forth herein.

119. Plaintiffs and Class Members were the intended beneficiaries of contracts with Defendants.

120. These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendants would act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs and Class Members' PII and to comply with industry standards and federal and state laws and regulations for the security of this information.

121. Defendants entered into special relationships with Plaintiffs and Class Members, who entrusted their confidential PII to Defendants.

122. Defendants promised and were obligated to protect the confidentiality of Plaintiffs and Class Members' PII from disclosure to unauthorized third parties. Defendants breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiffs and Class Members' PII, which resulted in the Data Breach. Defendants unreasonably interfered with the contract benefits owed to Plaintiffs and Class Members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII of Plaintiffs and the Class in Defendants' possession.

123. Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to Defendants, including paying for the services they received and entrusting Defendants with the confidential PII.

124. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiffs and Class Members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class Members paid for, and the services they received without reasonable data privacy.

125. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

126. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

127. As a direct and proximate cause of Defendants' conduct, Plaintiffs and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendants from their conduct. Plaintiffs also seek reasonable attorneys' fees and costs under applicable law.

**COUNT SIX**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

128. Plaintiffs incorporate paragraphs 1 through 65 as though fully set forth herein.

129. Plaintiffs and Class Members conferred a monetary benefit on Defendants in the form of monetary payments—directly or indirectly—for services.

130. Defendants collected, maintained, and stored the PII of Plaintiffs and Class Members and, as such, Defendants had knowledge of the monetary benefits conferred by Plaintiffs and Class

Members. The collection, maintenance, and storage of Plaintiffs and Class Members' PII was a central part of Defendants' business and ability to gain profits.

131. The money that Defendants directly or indirectly received from Plaintiffs and Class Members should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendants failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

132. As a result of Defendants' failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class Members paid for, and the services they received without reasonable data privacy.

133. Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and Class Members because Defendants failed to implement the data management and security measures that are mandated by industry standards and that Plaintiffs and Class Members paid for.

134. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Defendants. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendants traceable to Plaintiffs and the Class.

## COUNT SEVEN
## DECLARATORY JUDGMENT
## (On Behalf of Plaintiffs and the Nationwide Class)

135. Plaintiffs incorporate paragraphs 1 through 65 as though fully set forth herein.

136. Plaintiffs and the Class have stated claims against Defendants based on negligence, negligence per se, gross negligence, breach of implied contracts, breach of implied duty of good faith and fair dealing, and unjust enrichment.

137. Defendants failed to fulfill their obligations to provide adequate and reasonable security measures for the PII of Plaintiffs and the Class, as evidenced by the Data Breach.

138. As a result of the Data Breach, Defendants' systems are more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiffs and the Class going forward.

139. Plaintiffs seek a declaration that Defendants must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendants must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

**COUNT EIGHT**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")**
**(On Behalf of Plaintiffs and the California Class)**

140. California Plaintiffs, individually and on behalf of the California Subclass, incorporate paragraphs 1 through 65 as though fully set forth herein.

141. The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendants engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the UCL.

142. In the course of conducting their business, Defendants committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' and California Subclass members'

Personal Information, and by violating the statutory and common law alleged herein. Plaintiffs and California Subclass Members reserve the right to allege other violations of law by Defendants constituting other unlawful business acts or practices. Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

143. Defendants' above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendants' wrongful conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Defendants' practices are also contrary to legislatively declared and public policies that seek to protect Personal Information and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws such as the Article I, Section 1 of the California Constitution (California's constitutional right to privacy) and the Federal Trade Commission Act ("FTC Act") (15 U.S.C. § 45). The gravity of Defendants' wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct.

144. As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the UCL, Plaintiffs and California Subclass Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their Personal Information, (iv) statutory damages, (v) deprivation of the value of their Personal Information, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring financial accounts, and mitigating damages.

145. Unless restrained and enjoined, Defendants will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiffs, therefore, on behalf of themselves individually, California Subclass Members, and the general public, also seeks restitution and an injunction prohibiting Defendants from continuing such wrongful conduct, and requiring Defendants to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the Personal Information entrusted to them, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code § 17203.

**COUNT EIGHT**
**CALIFORNIA CONSUMER PRIVACY ACT**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")**
**(On Behalf of Plaintiffs and the California Class)**

146. California Plaintiffs, individually and on behalf of the California Subclass, incorporate paragraphs 1 through 65 as though fully set forth herein.

147. The CCPA was enacted to protect consumers' sensitive information from collection and use by businesses without appropriate notice and consent.

148. The CCPA imposes a duty on entities doing business in the State of California to implement and maintain reasonably security procedures and practices as appropriate given the nature of the sensitive information.

149. Defendants collected Plaintiffs' and California Subclass Members' PII for the purpose of providing life insurance, annuities, and financial services to California consumers.

150. Through the conduct complained of herein, Defendants violated the CCPA by subjecting Plaintiffs' and California Subclass Members' PII to unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violation of its duties to implement and maintain reasonable security procedures and practices appropriate to the nature and protection of that information. Cal. Civ. Code § 1798.150(a).

151. In compliance with Cal. Civ. Code §1798.150(b), on August 6, 2025, prior to the filing of this Complaint, Defendants were served notice of the California Subclass's claim for the CCPA violations alleged herein by certified mail, return receipt requested. To date, Defendants have failed to cure their CCPA violations.

152. Plaintiffs and the California Subclass are entitled to damages, including statutory damages, due to Defendants' CCPA violations. Ca. Civ. Code § 1798.150.

## VII. PRAYER FOR RELIEF

153. Plaintiffs, on behalf of themselves and on behalf of the proposed Classes, request that the Court:

(a) Certify this case as a class action, appoint Plaintiffs as class representative, and appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class.

(b) Find that Defendants breached its duties to safeguard and protect the PII of Plaintiffs and Class Members that was compromised in the Data Breach;

(c) Award Plaintiffs and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

(d) Award equitable, injunctive and declaratory relief as may be appropriate;

(e) Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

(f) Award pre-judgment and post-judgment interest as prescribed by law; and

(g) Grant additional legal or equitable relief as this Court may find just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 29, 2025

Respectfully submitted,

*<u>/s/ Thomas E. Loeser</u>*

Joseph W. Cotchett (SBN 36324)
Thomas E. Loeser (SBN 202724)
Adam J Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Rd #200,
Burlingame, CA 94010
Telephone: 650.697.6000
jcotchett@cpmlegal.com
tloeser@cpmlegal.com

Karin B. Swope (*pro hac vice* to be filed)
Andrew J. Fuller (*pro hac vice* to be filed)
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (206)-299-4184
kswope@cpmlegal.com
afuller@cpmlegal.com

*Attorneys for Plaintiffs and the Proposed Class*